1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY FRANK SNYDER, | CASE NO. 1:12-cv-01026-AWI-MJS (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS:** |
| v. | **1) FOR SERVICE OF COGNIZABLE FOURTEENTH AMENDMENT CLAIM AGAINST DEFENDANT MIMMS REGARDING DENIAL OF EXERCISE OPPORTUNITIES, AND** |
| FRESNO COUNTY, et al., | |
| Defendant. | **2) TO DISMISS REMAINING CLAIMS AND DEFENDANTS WITH PREJUDICE** |
| | **(ECF No. 14)** |
| | **OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

Plaintiff is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. (ECF No. 12.) Plaintiff has declined Magistrate Judge Jurisdiction. (ECF No. 4.) No other parties have appeared in the action.

The Court dismissed Plaintiff's original complaint with leave to amend. (ECF No. 13.) Plaintiff's First Amended Complaint, filed April, 13, 2015 (ECF No. 14) is before the Court for screening.

## I.   SCREENING REQUIREMENT

The *in forma pauperis* statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.   PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations

2

1    are not required, but "[t]hreadbare recitals of the elements of a cause of action,

2    supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.

3    662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

4    Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief

5    that is plausible on its face." Id. Facial plausibility demands more than the mere

6    possibility that a defendant committed misconduct and, while factual allegations are

7    accepted as true, legal conclusions are not. Id. at 677-78.

8

9

10   **III.    PLAINTIFF'S ALLEGATIONS**

11         The conduct giving rise to this suit occurred when Plaintiff was detained, awaiting

12   re-commitment as a Sexually Violent Predator (SVP), at the Fresno County Jail from

13   April 2 through April 6, 2012.  During this five-day period, Plaintiff was denied privileges

14   and accommodations he had had at Coalinga State Hospital, his previous and current

15   facility of commitment. He attributes responsibility for these deprivations to Fresno

16   County Sherriff Margaret Mims, the person responsible for implementing policies that

17   allegedly rendered his treatment tantamount to punishment, and to John Does 1-8.

18         Specifically, Plaintiff complains that he received no outdoor or indoor recreational

19   opportunities, and was subject to "environmental deprivation, extreme isolation, and lack

20   of sunshine" during his stay in the jail.   This contrasted with his treatment at Coalinga,

21   where he had access to an outdoor courtyard, a dayroom, and a well-appointed workout

22   room for long periods every day.

23         Plaintiff was also denied prescribed medication for nerve damage in his legs

24   despite repeated complaints to deputies and a doctor about his pain.  After three days,

25   Plaintiff's attorney was able to obtain a court order for Plaintiff to receive his medication.

26

27

28

Plaintiff attributes the three-day denial of his medicine to differences between the medical care polices at the jail and at CSH.  Plaintiff also alleges that he did not have access to his sex offender treatment while housed at the jail.

Plaintiff further complains that he was housed between two inmates, one who bounced constantly on his bed and the other who "yelled, hollered, and screamed the majority of the day and night." Plaintiff claims that the noise and discomfort created unconstitutional conditions of confinement.

In addition, plaintiff asserts he: was not permitted to bring his personal property or clothing with him; did not have his clothes cleaned every day as he had at CSH; had to wear standard, ordinary "red clothing" instead of another color that would identify him as a civil detainee entitled to more considerate treatment; and that he was denied adequate showers, confidential phone calls, confidential mail, confidential visits, a warm cell, and access to religious services

## IV.    ANALYSIS

### A. Linkage

Under § 1983, Plaintiff is required to demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights.  Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each

4

defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Here, Plaintiff has not adequately linked his medical claim or his claims regarding the noisy cell to Defendant Mims or to any of the Doe correctional officers. He states that he did not have access to his medicine for three days despite making pleas to unspecified "deputies" and to an unnamed doctor. He does not indicate that any of these "deputies" were Does 1-8, and he has not named any doctors as defendants. He does not plead any facts indicating that Defendant Mims was aware of, much less actively responsible for, the three-day gap in his treatment. Plaintiff states that "Mims' jail policy subjected plaintiff to medical services that are provided in accordance with Title 15," but he describes neither the policy itself nor how it resulted in a deprivation of his medicine or a level of care lower than Coalinga's. Therefore, the Court concludes that Plaintiff's claim of medical indifference fails because it is not linked to any defendants.

Similarly, Plaintiff has not stated whom he holds accountable for the noisy, disruptive conditions in his cell. In some cases, excess noise can give rise to a constitutional claim for SVPs, but only where Defendants know of or are responsible for the high noise level. See, e.g., Allen v. Mayberg, No. 1:06-CV-01801, 2010 WL 500467, at *10 (E.D. Cal. Feb. 8, 2010)(excessively loud PA system in Coalinga was "damaging

patients' hearing and disrupting their sleep on a regular and repeated basis").  Here,

Plaintiff has not alleged that he complained about the noise to a defendant or to anyone

else, nor has he pleaded facts indicating that a Defendant knowingly placed him or kept

him next to particularly disruptive inmates.  Without any connection to any of the

Defendants, Plaintiff's noise claims cannot stand.

**B. Fourteenth Amendment Substantive Due Process**

**1. Applicable Law**

As a civil detainee, Plaintiff is "entitled to more considerate treatment and

conditions of confinement than criminals whose conditions of confinement are designed

to punish." Jones v. Blanas , 393 F.3d 918, 931 (9th Cir. 2004)(citing Youngberg v.

Romeo, 457 U.S. 307, 322 (1982)).   Thus, like pretrial criminal detainees, Plaintiff may

avail himself of "the more protective [F]ourteenth [A]mendment standard," rather than the

Eighth Amendment, when challenging his conditions of confinement.  Jones, 393 F.3d at

931.  Under this standard, "due process requires that the nature and duration of

commitment bear some reasonable relation to the purpose for which the individual is

committed." Id. (citing Jackson v. Indiana, 406 U.S. 715, 738 (1972)). "At a bare

minimum, then, an individual detained under civil process, like an individual accused but

not convicted of a crime, cannot be subjected to conditions that amount to punishment."

Jones, 393 F.3d at 932 (citing Bell, 441 U.S. at 536).  Although a condition need not be

"independently cognizable as a separate constitutional violation" to amount to

punishment, it "must either significantly exceed, or be independent of, the inherent

discomforts of confinement." Demery v. Arpaio, 378 F.3d 1020, 1030 (9th Cir. 2004);

accord Endsley v. Luna, 750 F.Supp.2d 1074, 1100 (C.D. Cal. 2010). A presumption

arises that an SVP is being punished when he "is confined in conditions identical to,

similar to, or more restrictive than, those in which his criminal counterparts are held," or "more restrictive than those the individual would face following SVPA commitment." Jones, 393 F.3d at 932-933.

The length of time a deprivation continues is relevant to determining whether the deprivation amounts to punishment. See Pierce v. Cty of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008)(criminal detainee's length of stay in jail was one factor in determining whether Fourteenth Amendment violation had occurred); Endsley, 750 F.Supp.2d at 1101 (cramped conditions did not amount to punishment where Plaintiff was only exposed to them for "at most four hours per day"); Sisneroz v. Whitman, No. CV F 01-5058 2008 WL 4966220, at *9 (E.D. Cal. Nov. 20, 2008) (finding that "constitutional deprivation arises from systematic, substantial deprivation" and that some amenities "may be unavailable [to SVPs] for short periods of time for various reasons" without taking on constitutional proportions).  Thus, "more restrictive" treatment that would violate the Fourteenth Amendment over the long term does not necessarily cause constitutional injury for the short term.

Moreover, the presumption of punishment is rebuttable, and if a "particular condition or restriction is 'reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.'" Johannes v. Cty. of Los Angeles, No. CV-02-03197, 2011 WL 6149253, at *8 (C.D. Cal. April 8, 2011)(citing Bell v. Wolfish, 441 U.S. 520, 539 (1979)).  Legitimate, non-punitive governmental objectives include maintaining security, ensuring a detainee's presence at trial, and managing the detention facility effectively.  Jones, 393 F.3d at 932 (citing Hallstrom v. City of Garden City, 991 F.2d 1473, 1484 (9th Cir. 1993)).  Moreover, there is no outright prohibition on housing SVPs in jails or prisons, Jones, 393 F.3d at 932, and "the actual treatment a prisoner [or

detainee] experiences will depend upon predictions about him based upon his known history and the correctional officer's experience with him in the institutional setting." Cerniglia v. Cty. of Sacramento, 566 F.Supp.2d 1034, 1043-1044 (E.D. Cal. 2008). Detainees "whose history suggests a risk of escape or the likelihood of violence within the institution will be subjected to closer security than those whose history is free of violence and whose institutional history has been free of problems." Id.

### 2. *De Minimis* Deprivations

Plaintiff alleges that he did not receive clean clothes, did not have access to his sex offender treatment, and was not allowed certain personal items in his cell during his five days at the jail, whereas at Coalinga, he is entitled to daily laundry exchange, participates regularly in treatment, and may keep with him a myriad of personal possessions. Over the long term, such deprivations could conceivably be unconstitutional. Rainwater, 2012 WL 3276966, at *13 (citing Toussaint v. McCarthy, 597 F.Supp. 1388, 1410-11 (N.D. Cal. 1984), rev'd in part on other grounds, 801 F.2d 1080 (9th Cir. 1986))(failure to exchange laundry for weeks and months can violate Eighth Amendment); see also Allen, 2010 WL 500467, at *10. However, brief property restrictions, temporary inability to continue some scheduled activities, or denial of laundry services for less than a week do not "exceed the inherent discomforts" of civilian life, much less of incarceration. See Endsley, 750 F.Supp.2d at 1101-1102 (Plaintiff's complaints about cramped quarters did "not even exceed the discomforts endured by those who… live and work in close proximity with others"); Chappell v. Mandeville, 706 F.3d 1052, 1060 (9th Cir. 2013)(citing Hutto v. Finney , 437 U.S. 678, 686-687 (1978) for the proposition that a condition of confinement that could violate the Eighth Amendment when it continued for "weeks or months"  would not be unconstitutional if it "exist[ed] for

just a few days"); see also Sisneroz, 2008 WL 4966220, at *9 (temporary deprivation of laundry services not unconstitutional).

The above authority, as well as reason and logic, satisfies the Court that the short-term lack of SVP-specific clothing, laundry services, and access to personal property would constitute negligible deprivations under almost any circumstances, but certainly when balanced against the logistical challenges a local jail would face in accommodating such services for such a short-term inmate. These claims should be dismissed with prejudice.

### 3.   Recreation Opportunities

Plaintiff states that he received no indoor or outdoor recreation time at the jail, a marked change from Coalinga, where he has extended access to a dayroom, an outdoor yard, and a gym.  He alleges that this had adverse effects on his mood and health.

Because some amount of exercise time is required by the Constitution, see Pierce, 526 F.3d at 1212, deprivation of *all* out of cell time exceeds the discomforts of ordinary incarceration. Additionally, as described, the conditions at the Jail were significantly more restrictive than those at CSH. Accordingly, the Court will recommend that this claim proceed on the presumption that the complete deprivation of both indoor and outdoor recreation amounts to punishment in violation of the Fourteenth Amendment.   See Jones, 393 F.3d at 932-933; Sumahit v. Parker, No. CIV S-03-2605, 2009 WL 2879903, at *17 (E.D. Cal. Sept. 3, 2009)(plaintiff's allegations regarding restricted dayroom access compared to other inmates entitled to presumption of punishment). Plaintiff has adequately linked this claim to Defendant Mims as the individual responsible for implementing policies regarding exercise and recreation at the jail.

However, Plaintiff should be aware that the Court allows the claim to proceed in the vacuum in which it is presented. Evidence from the Defense may well show such conditions do not violate the Fourteenth Amendment.  Jail staff may lawfully house SVPs in conditions far more restrictive than those in the state hospitals in order to protect other inmates or the SVP himself or to manage the jail effectively. <u>See, e.g.</u>, <u>Sundquist v. Philp</u>, No. C-06-3387 2008 WL 859452, at *9 (N.D. Cal. Mar. 28, 2008)(dayroom access may be restricted for detainees posing "an unusual risk or hazard to prison staff or other inmates, or who need protection from other inmates"); <u>see also</u> <u>Rainwater</u>, 2012 WL 3276966, at *12 (restrictions on SVP's recreation time was related to effective management of the jail where many inmates were also vying for recreation time).

### 4. Remaining Claims

Plaintiff makes conclusory allegations that Defendants denied him adequate showers; confidential calls, visits, and mail; library access; sleep, "sanitary meal procedures;" and socialization.  Without any details about these alleged deprivations, the Court finds that Plaintiff fails to plead sufficient facts to state a Fourteenth Amendment claim. Even if he had included additional facts, it is difficult to imagine scenarios in which such deprivations during his short five day stay at the jail were more than *de mininmis* and subject to dismissal for the same reason as those discussed in section IV. B. i., above.

## V.   CONCLUSION & RECOMMENDATIONS

Plaintiff's First Amended Complaint fails to state a cognizable Fourteenth Amendment claim on any basis except for the complete denial of indoor and outdoor recreational activities by Defendant Mims.

Based on the foregoing it is HEREBY RECOMMENDED that:

1.      Plaintiff be permitted to  proceed on the First Amended Complaint's Fourteenth Amendment claim for denial of indoor and outdoor recreational activities against Defendant Mims;

2.      All other claims asserted in the First Amended Complaint and all other named Defendants should be dismissed with prejudice;

3.      Service should be initiated on the following Defendant:

MARGARET MIMMS, Fresno County Sherriff

4.      The Clerk of Court should send Plaintiff one USM-285 form, one summons, a Notice of Submission of Documents form, an instruction sheet, and a copy of the First Amended complaint, filed April 13, 2015;

5.      Within thirty (30) days from the date of adoption of these Findings and Recommendations, Plaintiff should complete a return to the Court the notice of submission of documents along with the following documents:

   a. One completed summons,

   b. One completed USM-285 form for each Defendant listed above,

   c. Four (4) copies of the endorsed First Amended Complaint filed April 13, 2015; and

6.      Upon receipt of the above-described documents, the Court should direct the United States Marshal to serve the above-named Defendant pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen

11

(14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    June 3, 2015           /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE